

**FILED & ENTERED**

**OCT 23 2015**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY penning   DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Zev Jeff Bentow<br><br><br><br><br><br>Debtor. | Case No.: 2:14-bk-31963-TD<br><br>CHAPTER 11<br><br>**ORDER TO SHOW CAUSE WHY DEBTOR'S CHAPTER 11 CASE SHOULD NOT BE DISMISSED**<br><br>Date:       November 17, 2015<br>Time:       10:00 a.m.<br>Courtroom:   1345 |

   TO THE DEBTOR, TO THE UNITED STATES TRUSTEE, AND TO ALL OTHER PARTIES IN INTEREST IN THE ABOVE-ENTITLED CASE:

   NOTICE IS HEREBY GIVEN, AND IT IS HEREBY ORDERED that Debtor show cause, if any there be, at the time and place specified above why this case should not be dismissed based on the grounds set forth below.

**1. Debtor Has Not Shown that His Chapter 11 Petition Was Filed in Good Faith.**

Debtor filed his chapter 11 petition on November 24, 2014. Debtor's Schedules filed December 16, 2014 and motion for order authorizing use of cash collateral filed January 14, 2015 show that Debtor has an interest in the following real property: a 12-unit apartment building on Avalon Blvd. in Los Angeles, CA (Avalon) valued at $850,000 that generates $6,711 in monthly rent; a commercial property in Hesperia, CA valued at $1,200,000 that generates $12,465 in monthly rent; a second commercial property in Hesperia, CA valued at $1,100,000 that generates $11,900 in monthly rent; a property in Apple Valley, CA valued at $600,000 that generates $4,500 in monthly rent; a property in Phelan, CA valued at $200,000 that generates $1,043 in monthly rent; a condominium unit in Apple Valley, CA valued at $50,000 that generates $695 in monthly rent; two single family residences in Hesperia, CA valued at $180,000 each that generate $1,100 each in monthly rent; a commercial property in Hesperia, CA valued at $300,000 that generates $2,100 in monthly rent; a mobile home located in Victorville, CA valued at $30,000; a one-third interest in property in El Mirage, CA valued at $8,250; and 17 parcels of raw land.

**Debtor's Solvency.** According to Debtor's cash collateral motion, Debtor has approximately $4,350,000 in equity in the above-mentioned real property investments.

**The Avalon property.** Avalon has become the focal point of Debtor's chapter 11 case. Nevertheless, Debtor's Schedules and cash collateral motion indicate that Debtor would still have equity in Avalon even if both of the claims asserted against the property were allowed in full.

**Superior Court litigation.**  Prior to the petition date, Debtor was involved in litigation before the Los Angeles Superior Court regarding Avalon.

Debtor initiated the superior court action by filing a complaint against Sentry Reconveyance Corporation, R. C. Temme Corporation, Richard C. Temme, and Woodland Hills Mortgage Corporation (collectively, Temme) seeking to quiet his title in Avalon.  Temme cross-complained for specific performance of its alleged promissory note and first deed of trust.

On July 9, 2014, the superior court denied Debtor's motion for a preliminary injunction restraining Temme from conducting a foreclosure sale of Avalon.

**Removal.**  On February 9, 2015, Debtor removed the superior court action to the bankruptcy court.

On April 10, 2015, this court held a hearing on its order to show cause why the Avalon litigation should not be remanded to the superior court.  Debtor, Temme, and creditors East West Bank and Vernon 2014, LLC (V-2014) appeared.

At the hearing, Debtor's counsel described the complex and unorthodox financing scheme entered into in 1996 by Debtor, his alleged alter ego SWOC Corporation, and Temme with respect to Avalon and another property formerly owned by Debtor located at 1185 E. Vernon Ave., Los Angeles, California (Vernon).

Debtor also outlined the complex history, beginning in 1980, of ownership in the promissory notes and alleged first deeds of trust, now owned by Temme, encumbering both Avalon and Vernon.

**Failure to File Joint Stipulation of Uncontested Facts.**  At the April 10, 2015 hearing, Debtor represented to the court that, despite the unconventional nature of the

-3-

financing arrangement and the lack of adequate documentary evidence in the record to support any of the parties' claims, the essential facts of the case were not in dispute and could be resolved within a reasonable time.  Debtor's counsel indicated that he would file a joint stipulation of uncontested facts to narrow the issues and provide a clear outline for timely resolution in the bankruptcy court.

On May 5, 2015, this court withdrew the order to show cause in the expectation that the joint stipulation would be forthcoming shortly.

In the six months since the OSC hearing, Debtor has yet to file the joint stipulation of uncontested facts.

**2.    Debtor Has Not Demonstrated that He Has A Viable Reorganization Plan in Prospect.**

Debtor's chapter 11 case bears none of the traditional features of a valid, workable reorganization.

**Inadequacy of Disclosure Statement.**  On March 24, 2015, Debtor filed a disclosure statement.  A hearing on the disclosure statement took place on May 6, 2015.  At the hearing, the court observed that the disclosure statement contained hundreds of pages of documentation which obscured, rather than clarified, the issues that would have to be resolved in Debtor's chapter 11 case.

Debtor's disclosures contained no financial projections, no budget, and no plan for paying creditors' claims.

Debtor's disclosures indicated that Debtor "might" file an objection to V-2014's $1,350,000 proof of claim, but provided no insight as to why no claim objection had yet been filed.

Main Document    Page 5 of 11

None of the issues regarding Temme's alleged Avalon first deed of trust were addressed in Debtor's disclosures. Rather, Debtor and Temme maintained that their dispute would be resolved in the context of Debtor's adversary complaint objecting to Temme's proof of claim.

Debtor inadequately disclosed its proposed treatment of U.S. Bank's two claims. Specifically, Debtor's disclosures indicated that U.S Bank's claims would be "unaffected," but proposed to extend the maturity on both of U.S. Bank's promissory notes from 2018 until 2033.

Debtor inadequately disclosed its proposed treatment of the San Bernardino tax collector's claim. Specifically, Debtor stated that he would "probably" abandon the parcels subject to San Bernardino's tax lien, but otherwise provided no indication of his proposed treatment of the claim.

In sum, the disclosure statement was plainly unacceptable, as the court expressly ruled. At the May 6, 2015 hearing, the court set a deadline of June 29, 2015 for a first amended disclosure statement. That date was continued to October 31, 2015 by stipulation of the parties.

Now, as of October 20, Debtor has indicated to the court that the parties in interest intend to file a further stipulation again seeking to postpone the due date for Debtor's first amended disclosure statement.

**Vernon 2014's Cross-Complaint.** In the five months since the last disclosure statement hearing, Debtor's chapter 11 case has only grown in complexity. It now resembles a full-fledged, multi-party superior court action inappropriately before the bankruptcy court. On August 24, 2015, V-2014 filed a first amended cross-complaint

against Temme, relying on the breadth of the bankruptcy court's "related to" jurisdiction under In re Pegasus Gold Corp., 394 F.3d 1189 (9th Cir. 2005).  On September 9, 2015, V-2014 moved for a preliminary injunction restraining Temme from foreclosing on Vernon, a property that is not an estate asset.

3. **None of the Outstanding Disputes Regarding Avalon or Vernon Is Likely To Be Resolved Within a Reasonable Time.**

As discussed below, none of the outstanding issues in Debtor's chapter 11 case is likely to be resolved expeditiously so as to permit a "reasonable possibility of a successful reorganization within a reasonable time" in accordance with United Sav. Ass'n v. Timbers of Inwood Forest, 484 U.S. 363, 376 (1988).

Without making any findings of fact or law with respect to any of the parties' claims or allegations in this chapter 11 case or adversary proceeding, the court believes, on the basis of the documents filed, that the issues in dispute are roughly as follows:

In 1980, Shazuka Yaguchi sold Vernon to E. Harold Ey, Joseph De Ponte, Michael and Lois McKee, and C.P. and Rebecca Grichar (the McKee group) subject to a $200,000 promissory note and deed of trust (collectively, the Vernon Note).

In 1989, Debtor purchased Vernon from the McKee Group.

In 1996, the Vernon Note matured.  Debtor was allegedly unable to renegotiate the terms of the note with the Yaguchi estate.

**The Combination Note.**  Also in 1996, Temme loaned approximately $254,000 to SWOC Corporation (SWOC), a Delaware corporation wholly owned by Debtor. SWOC allegedly used the proceeds of Temme's loan to buy the Vernon Note from the

-6-

Yaguchi estate and a note and deed of trust encumbering Avalon (collectively, the Avalon Note) from United Equity Corporation, another corporation wholly owned by Debtor.  As security for the $254,000 note (referred to by the parties as the Combination Note), SWOC allegedly assigned its newly acquired personal property interests in the Avalon Note and the Vernon Note to Temme.

V-2014 alleges that SWOC is Debtor's alter ego and that the Vernon and Avalon Notes were extinguished when SWOC purchased the notes pursuant to Cal. Civil Code §§ 1473 ("Full performance of an obligation, by the party whose duty it is to perform it, or by any other person on his behalf, and with his assent, if accepted by the creditor, extinguishes it.") and 2941 (requiring mortgagee or assignee of the mortgagee to issue certificate of discharge upon satisfaction of the mortgage).  Temme challenges V-2014's view by claiming that because SWOC is legally and functionally distinct from Debtor, SWOC's purchase of the notes did not constitute performance and release of Debtor's obligations.

**Application of Combination Note payments.**  From 1996 until 2011, Debtor claims to have made approximately $621,000 in payments to Temme in satisfaction of the Combination Note.  SWOC, the promisor on the Combination Note, does not appear to have issued these payments.  Nor does it appear that Debtor made any payments to SWOC on account of the underlying Vernon Note and Avalon Note.  Rather, Debtor and V-2014 allege that Debtor made monthly payments directly to Temme pursuant to "Offset Statements" signed by Debtor and his "employee" co-director of SWOC instructing Debtor to make his monthly payments on the Vernon Note and Avalon Note directly to R. C. Temme Corporation, SWOC's alleged assignee.

Debtor and V-2014 allege that <u>all</u> of Debtor's payments to Temme on the Combination Note ought to have been applied to Debtor's obligations under the Avalon and Vernon Notes. As support for its position, V-2014 relies on Cal. Comm. Code § 9406 (requiring an account debtor to pay the assignee of a promissory note after receiving notification of the assignment).

Temme's contrary position is that, per Debtor's own instructions, <u>none</u> of Debtor's payments on the Combination Note reduced the balances owing on the Vernon Note and Avalon Note. Temme maintains that it applied Debtor's payments to the Combination Note only, so as to accommodate Debtor's alleged strategy of leaving substantial unpaid balances on the Vernon Note and Avalon Note to gain "leverage" over junior lienholders.

There is no indication in the record of any written agreement with respect to the application of payments. Nor is it clear whether Debtor's instructions to Temme, if any, would affect the legal analysis under the relevant provisions of the Commercial Code. Moreover, even assuming that Debtor's payments ought to have been applied to the underlying notes, there is nothing in the record that would help to establish the order in which the two notes should have been satisfied. Depending on whether the Avalon Note or the Vernon note were credited first, the amounts owing on the two notes would vary considerably.

To add to the confusion, Temme asserts that as of 2010 there was approximately $16,000 owing on the Combination Note, while Debtor contends that by that time Debtor had already overpaid its obligations to Temme on the Combination Note by $35,000!

**Temme's 2011 UCC Sale.**  In October 2011, Temme purchased the Avalon Note and the Vernon Note from SWOC at a UCC foreclosure sale for approximately $23,000. Temme alleges that its bid was $1 in excess of the then outstanding balance on the Combination Note, including late fees and miscellaneous charges.  Debtor and V-2014 now assert that the 2011 UCC sale was not commercially reasonable, and thus invalid.

There is nothing in the record before the court to help resolve the issue of whether the UCC sale was reasonable.  Further argument, and possibly further discovery, apparently will be necessary, not to mention a trial and perhaps an appeal. One factor to consider in determining the reasonableness of the UCC sale is the value of the Vernon and Avalon Notes.  Debtor argues, in effect, that the Avalon and Vernon Notes were worthless, while V-2014 provides neither evidence nor argument with respect to the value of these notes at the time of sale.

**Alleged payments from escrow.**  The court's record suggests that by October 2011, Debtor had already sold Vernon to Raul Gonzalez, who later sold the property to V-2014.

Debtor and V-2014 allege that at the time of Debtor's sale to Gonzalez in 2005, Temme submitted a payoff demand to escrow for approximately $190,000, apparently the then outstanding balance owing on the Combination Note.  Debtor and V-2014 further allege that Temme's payoff demand was satisfied in full.  In response, Temme insists that he was never paid from the 2005 escrow and was in fact "unaware" that escrow had even closed.  To date, no party has supported its position on this issue with any plausible allegation of fact or documentation.

Since Temme acquired title to the Vernon Note and Avalon Note at the October 2011 UCC sale, Temme allegedly has attempted to foreclose on both Avalon and Vernon. Temme asserts that approximately $460,000 remain owing on the Avalon Note and that approximately $700,000 remain owing on the Vernon Note.

**SUMMARY**

Simply stated, there is no discernible issue of bankruptcy law anywhere to be found in Debtor's chapter 11 case. There is no workable disclosure statement on file. There is no viable reorganization in prospect. Debtor is solvent, with a self-reported $4,350,000 in equity, while only one of his 28 properties is in dispute.

As for this chapter 11 case, confusion reigns! Given the lengthy, complex, and unusual history of the above transactions, the pending litigation, the number of issues in dispute, and the numerous entities involved, each with its own heavily disputed contentions, it is the court's preliminary assessment that there is no reasonable likelihood of a successful reorganization within a reasonable time and at reasonable cost, both in terms of money and time.

In addition, it would appear sensible for this chapter 11 case to be dismissed with a bar and for the Debtor and his creditors to address their differences privately or in the state court, as necessary, since the only issues in this chapter 11 case arise from real property financing transactions governed by California law, all of which should be litigated and addressed in the superior court.

**IT IS FURTHER ORDERED** that any response to this Order To Show Cause must be served upon all parties in interest and filed with the Clerk of this Court not later than November 5, 2015. Any response, reply or opposition to any response must be

served and filed not later than November 10, 2015.  Judge's copies, properly tabbed, must be delivered to chambers not later than 12:00 p.m. on November 5 or November 12, as appropriate, pursuant to this court's local rules and Court Manual.

Date: October 23, 2015

Thomas B. Donovan
United States Bankruptcy Judge

-11-